UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

R.C.C.,

       Petitioner,

       v.

KRISTI NOEM, et al.,

       Respondents.

No. 1:26-cv-00373-TLN-EFB

**ORDER**

This matter is before the Court on Petitioner R.C.C.'s[1] ("Petitioner") Petition for Writ of Habeas Corpus (the "Petition"). (ECF No. 1.) Respondents filed an answer. (ECF No. 8.) Petitioner filed a traverse. (ECF No. 9.) Both parties waived a hearing. (ECF Nos. 8, 9.) For the reasons set forth below, the Petition is GRANTED.

///

///

---

[1]     Petitioner also filed a motion to proceed via pseudonym (ECF No. 3); Respondents do not oppose (ECF No. 8 at 3). Finding good cause, Petitioner's motion is GRANTED.

1

## I.    FACTUAL AND PROCEDURAL BACKGROUND[2]

Petitioner is a native and citizen of Cuba and an asylum applicant in the United States. (ECF No. 1 at 6.)  In August 2022, Petitioner entered the United States without inspection seeking asylum.  (*Id.*)  He turned himself in to U.S. Customs and Border Protection and expressed a fear of returning to Cuba.  (*Id.*)  Shortly thereafter, immigration authorities released Petitioner on his own recognizance to pursue his asylum claim.  (*Id.*)  Petitioner's asylum application is still pending.  (*Id.*)

In the three years since his release, Petitioner has: reunited with his wife who is a lawful permanent resident of the United States; obtained a work permit valid for five years; and established his own business and a stable residence.  (*Id.* at 7.)  Petitioner has also complied with all the conditions of his release.  (*Id.*)  He does not have a criminal record.  (*Id.*)

Nevertheless, on September 18, 2025, U.S. Immigration and Customs Enforcement ("ICE") detained Petitioner at a scheduled check-in appointment.  (*Id.* at 8.)  Petitioner was not been provided any notice or opportunity to be heard as to his detention.  (*Id.*)  Petitioner was detained without a hearing for four months.  (*See id.*)

On January 18, 2026, Petitioner challenged the lawfulness of his civil detention through the Petition and a Motion for Temporary Restraining Order ("TRO"). (ECF Nos. 1, 2.)  On January 21, 2026, the Court found Petitioner was likely to succeed on his claims that his detention violated the Immigration and Nationality Act ("INA") and the Fifth Amendment Due Process Clause and ordered Petitioner's release.  (ECF No. 5.)  The Court now considers the Petition on the merits.

## II.    STANDARD OF LAW

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure

---

[2]    The facts are not disputed.

2

release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001).  Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention.  *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

### III.   ANALYSIS

Petitioner claims his detention violates the INA and the Fifth Amendment Due Process Clause.[3]  (ECF No. 1 at 16–18.)  In response, Respondents contend Petitioner is an "applicant for admission" who is subject to mandatory detention under 8 U.S.C. § 1225(b)(2).  (ECF No. 8 at 3.)  The Court discusses each claim in turn.

#### A.   Violation of the INA

Under the INA, 8 U.S.C. § 1226(a) ("§ 1226(a)") "provides the general process for arresting and detaining [noncitizens] who are present in the United States and eligible for removal." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022).  Section 1226(a) provides the Government broad discretion whether to release or detain the individual and it provides several layers of review for an initial custody determination.  *Id.*  It also confers "an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change." *Id.* at 1202.

Conversely, 8 U.S.C. § 1225(b) ("§ 1225(b)") mandates detention during removal proceedings for applicants for admission and does not provide for a bond hearing.

Until the U.S. Department of Homeland Security ("DHS") changed its policy in July 2025

---

[3]   Petitioner also alleges Respondents violated the Administrative Procedure Act, Fifth Amendment substantive due process, and the district court's order in *Maldonado Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3713987 (C.D. Cal. Dec. 18, 2025).  (ECF No. 1.)  The Court finds it need not address Petitioner's additional claims to rule on the Petition, as they seek the same relief already warranted under the INA and procedural due process claims.

3

("DHS's July Policy"), the Government consistently applied § 1226(a), not § 1225(b), to noncitizens residing in the United States who were detained by immigration authorities and subject to removal.

Courts nationwide, including this one, have overwhelmingly rejected the Government's new legal position and have found DHS's July Policy unlawful. *See Morales-Flores v. Lyons*, No. 1:25-CV-01640-TLN-EFB, 2025 WL 3552841, at *3 (E.D. Cal. Dec. 11, 2025) (explaining this Court's reasons for taking this position and collecting cases); *see also Maldonado Bautista v. Santacruz*, No. 5:25-cv-01873-SSS-BFM, 2025 WL 3713987 (C.D. Cal. Dec. 18, 2025) (issuing vacatur of unlawful DHS July Policy for a nationwide certified class).

Petitioner asserts he was unlawfully detained under § 1225(b)(2) when § 1226(a) should have governed his detention. (ECF No. 1 at 16–17.) This Court agrees. Section 1225(b)(2) applies only to "applicants for admission" "seeking admission" — a category that does not include noncitizens like Petitioner who already entered the United States and was residing here at the time of his re-detention. *See Morales-Flores*, 2025 WL 3552841, at *3. This Court has made its position on this statutory question clear. *Id.* Absent new argument, case law, or distinguishable facts, this Court will not reconsider its position.

Thus, Petitioner is not an "applicant for admission" subject to mandatory detention under § 1225(b)(2). Petitioner was instead subject to § 1226(a) and was entitled to the process that statute requires, including a bond hearing at a minimum. Yet, Respondents did not provide any such hearing to Petitioner in over four months of detention. Accordingly, the Court finds Respondents violated Petitioner's statutory rights under the INA.

### B. Violation of Procedural Due Process

The Fifth Amendment prohibits government deprivation of an individual's life, liberty, or property without due process of law. U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). These due process rights extend to immigration proceedings and detention. *Id.* at 693–94.

Courts examine procedural due process claims in two steps: the first asks whether there

exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

### i. *Liberty Interest*

As for the first step, the Court finds Petitioner has established a protectable liberty interest. *See Rico-Tapia v. Smith*, No. CV 25-00379 SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025) (noting "[e]ven where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause"). "[T]he government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release]." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025) (quoting *Morrissey*, 408 U.S. at 482) (modifications in original)). "Accordingly, a noncitizen released from custody pending removal proceedings has a protected liberty interest in remaining out of custody." *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *6 (N.D. Cal. Sept. 12, 2025). To determine whether an individual's conditional release rises to the level of a protected liberty interest, courts have "compar[ed] the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*." *R.D.T.M. v. Wofford*, No. 1:25-cv-01141-KES-SKO, 2025 WL 2617255, at *3 (E.D. Cal. Sept 9, 2025).

Here, Petitioner gained a liberty interest in his continued freedom after he was released from custody on his own recognizance in 2022. (ECF No. 1 at 6.) Under *Morrisey*, this release implied a promise that he would not be re-detained, during the pendency of his immigration proceedings, if he abided by the terms of his release. His liberty interest was also increased by time and reliance. For three years, Petitioner complied with the conditions of his release and built a life. (ECF No. 1 at 7.) He reunited with his wife, started a business, established a stable residence, and built relationships. (*Id.*) The Government granted Petitioner a five-year work

authorization increasing his expectation that he could continue his release until a decision on his asylum application. (*See id.*)  As this Court has found previously, along with many other courts in this district when confronted with similar circumstances, Petitioner has a clear interest in his continued freedom.  *See, e.g.*, *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the Government's actions in allowing petitioner to remain in the community for over five years strengthened petitioner's liberty interest).

*ii.   Procedures Required*

As to the second step — what procedures or process is due — the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  As set forth below, the Court finds Petitioner has established his due process rights were violated.

First, Petitioner has a substantial private interest in remaining free from detention.  As discussed above, Petitioner was out of custody for approximately three years and had built a life and community with his family and business.  Despite that, Petitioner has now been detained for over four months without being afforded an opportunity to be heard, inflicting hardship on him and his family.  Accordingly, this factor weighs in favor of finding Petitioner's private interest has been impacted by his detention.  *See Manzanarez v. Bondi*, No. 1:25-CV-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly).

Second, the risk of erroneous deprivation is considerable given Petitioner has not received any hearing, either pre- or post-deprivation, nor did he receive notice of the reasons for his detention. (ECF No. 1 at 8.)  Petitioner asserts that he complied with all conditions of his release, has never been arrested, and has no criminal history. (*Id.* at 7.)  Indeed, his arrest was the direct result of his compliance, occurring at a routine ICE check-in. (*Id.*)  Thus, the Court finds there is a serious risk that without process Petitioner may have been erroneously deprived of his liberty interest.  Without any procedural safeguards to determine whether his detention was justifiable,

6

the probative value of additional procedural safeguards is high. *R.D.T.M.*, 2025 WL 2617255, at *4.

Finally, the Government's interest is low, and the effort and cost required to provide Petitioner with procedural safeguards are minimal. *See Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025). Where removal is not imminent under a final order of removal, "[t]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by [ ] bond or alternative conditions." *Hernandez*, 872 F.3d at 994; *see also R.D.T.M.*, 2025 WL 2617255, at *4 ("Civil immigration detention, which is nonpunitive in purpose and effect is justified when a noncitizen presents a risk of flight or danger to the community.") (cleaned up).

Here, Petitioner's asylum application is still pending and there is no final order of removal. (ECF No. 1 at 6.) Additionally, DHS would have determined in 2022 that Petitioner was not a danger to the community nor a flight risk before they released him on his own recognizance. (*See id.*; 8 C.F.R. § 1236.1(c)(8).) In the subsequent three years, Petitioner's conduct of compliance only bolsters those findings. Respondents do not argue otherwise. Therefore, on this record, Respondents had no legitimate interest in detaining Petitioner.

Additionally, the cost and time of procedural safeguards are minimal here. Notice and custody determination hearings are routine processes for Respondents. Indeed, these are the very processes owed to Petitioner under § 1226(a). It is also less of a fiscal and administrative burden for the Government to return Petitioner home to await a determination on his immigration proceedings than to continue to detain him. *See Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) ("[T]he Ninth Circuit has recognized that the costs to the public of immigration detention are staggering.").

The Court finds that, under these circumstances, Respondents were required to provide notice and a pre-deprivation hearing. The United States Supreme Court "usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original). The Court

describes post-deprivation remedies as the "special case" where those are "the only remedies the State could be expected to provide." *Id.* at 129.  Here — where Petitioner has substantially complied with the conditions of his release, has no criminal history, and there is no final order of removal — the Court finds pre-deprivation notice and a hearing are possible and valuable to preventing erroneous deprivation of liberty.  Further, Respondents have not provided any substantive opposition to the contrary.  (*See* ECF No. 8.)

Respondents did not provide either notice or a pre-deprivation hearing.  Nor did Respondents provide a post-deprivation hearing over four months of detention.  Accordingly, Respondents violated Petitioner's procedural due process rights.

Upon finding Petitioner's detention violated the INA and due process, the Court GRANTS the Petition.  (ECF No. 1.)

**IV.    CONCLUSION**

Accordingly, IT IS HEREBY ORDERED:

1.  Petitioner's Motion to Proceed Via Pseudonym (ECF No. 3) is GRANTED.

2.  Petitioner's Petititon for Writ of Habeas Corpus (ECF No. 1) is GRANTED.

3.  Respondents are ENJOINED and RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a pre-deprivation hearing before a neutral fact-finder where: (a) Respondents show material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing evidence that Petitioner poses a danger to the community or a flight risk.  At any such hearing, Petitioner shall be allowed to have counsel present.

4.  The Clerk of the Court shall enter judgment in favor of Petitioner and close this case.

IT IS SO ORDERED.

Date: February 9, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE